[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION REGARDING DEFENDANT'S MOTION TO MODIFYCODED NO. 119
The defendant has filed a motion to modify alimony dated June 12, 1997, coded No. 119. Many of the facts that give rise to this motion to modify alimony are not in dispute. The marriage between the parties was dissolved on October 15, 1992. The judgment incorporated, by reference, a separation agreement entered into between the parties dated October 15, 1992. As a result of that agreement, the plaintiff received the following assets: (a) residence — 200 South King Street, Danbury, Connecticut with a fair market value between $195,000 and $225,000, and a first mortgage of approximately $5756; (b) a one-half interest in two condominiums located at 100 L and 133 U Stony Hill Village, Brookfield, Connecticut with a total value of approximately $230,000, secured by a home equity loan with a balance of approximately $174,000. The agreement provided that those two condominiums were to be sold and the home equity loan that was a second mortgage on the residence at 200 South King Street, Danbury, Connecticut was to be paid off from the proceeds of the sale and the balance, if any, from the proceeds was to be divided equally between the parties; (c) a one-third interest in South Wells Avenue, Danbury, Connecticut with a one-third equity of $39,333; (d) a 1991 Honda with a value of $12,000 and no loan; (e) household furniture, jewelry and furs with a value of $15,000; (f) Union Savings Bank checking with an average balance of $100; (g) A. G. Edwards stock purchase plan with a value of approximately $3550; (h) a one-third interest in A. G. Edwards with a one-third value of approximately $850; (i) A. G. Edwards IRA with a value of approximately $41,000; (j) approximately $6750 to be transferred from the defendant's interest in an IRA with A. G. Edwards: and (k) A. G. Edwards 401K plan with a value of $4600.
The defendant, under the agreement, was to retain his 1985 Toyota with a value of $500 and his 1987 boat with a value of $5000, his tax shelter with a value of approximately $63,000, his Xerox annuity with a value of approximately $82,000 and his Great American annuity with a value of approximately $28,000. The balance of his A. G. Edwards stock with a total value of $18,402, CT Page 11679 less $6750 to be transferred to the plaintiff, leaving a remaining balance that he would retain of approximately $11,650.
The separation agreement also provided that the defendant pay alimony to the plaintiff in the amount of $400 weekly. Alimony was to terminate when the defendant retired under the state of New York teacher's retirement plan and he commenced to receive his retirement pay for which the wife was to receive 50 percent, based on a formula as provided for in the agreement.
At the time of dissolution, the plaintiff was employed as a stockbroker for A. G. Edwards and Company with an average gross weekly income of $398 and a net weekly income of $314. In addition, she had rental income of $20 per week, less an estimated taxes of $3 per week, for a net weekly rental income of $17 per week, and a combined net weekly income of $331.
At the time of dissolution, the defendant was employed as a teacher with a gross weekly income of $1327 and a net weekly income of $814.91. That net weekly income included a deduction for a credit union loan of $60, which for the purpose of this decision the court is disallowing.
The threshold issue regarding the defendant's motion to modify alimony is whether there has been a substantial change in circumstances between October 15, 1992 and the present time. The parties stipulated that any modification order entered by this court will be retroactive to July 7, 1997.
The court finds the following additional facts. The defendant continues to be a teacher at Somers Central School, Somers, New York. The defendant's financial affidavit dated July 26, 1997, shows gross weekly income from his principal employment of $1506 and net wages of $867.24, together with additional net wages from part-time employment of $127.41, for a combined net weekly income of $994.65. His 1996 income tax return shows W2 wages of $76,258. His medicare teacher wages for 1996, were $81,824.19. His 1996 W2 wages consisted of $69,324 as a teacher, plus an additional $6934 in his part-time employment at a men's store. The difference between his medicare wages as a teacher of $81,824.19 and his W2 wages as a teacher of $69,324, or $12,500, is as a result of payments to his tax sheltered annuity of $12,500. His present annual base salary as a teacher is approximately $76,000. In addition, he received additional income doing part-time intramural teaching and part-time summer reading. For the CT Page 11680 purposes of this decision, the court finds that his present gross annual income consists of $81,824 teaching income, plus an additional $6934 in his part-time clothing store income for a combined annual income of $88,758. That total of $88,758 which when divided by fifty-two amounts to $1706 gross weekly, which the court is using, less weekly deductions, in determining the defendant's net weekly income. His financial affidavit shows a weekly deduction for $97.56 for social security and medicare. It also shows a deduction of $9.20 for union dues. The court is disallowing the union dues deduction as there is no evidence that his union dues are a mandatory expense. He also shows a deduction of $240 weekly for his tax shelter annuity. That is not a mandatory deduction, and therefore, the court is disallowing it. He has a deduction of $292 for federal and New York State taxes. He also pays $326 annually for Connecticut taxes that is not shown on his financial affidavit. The court finds that his combined net weekly income from his teaching position, plus his part-time work as a teacher, plus his part-time employment at the clothing store is approximately $1310.
Although not shown on his financial affidavit dated June 20, 1997, the defendant owns a boat with a fair market value between $4000 and $5000. He is presently residing with a female companion in a home that they own in joint names. The fair market value of that home is $314,000. It has a mortgage balance of approximately $97,000 and an equity of approximately $217,000.
He has equity in the condominium that he jointly owns with the plaintiff. That condominium is worth approximately $90,000, and has a mortgage of approximately $57,000, and a total equity of approximately $33,000, for which his one-half interest has an equity of $16,500. He owns a motor vehicle with an equity of $10,000. He has bank accounts totalling $11,910. He has various deferred compensation plans and IRAs with a total value of $336,898. The combined value of all of his assets is $484,308.
The plaintiff continues to be employed as a stockbroker with A. G. Edwards. Her present gross weekly income is $1192. Her net weekly income is $664. In 1996, her gross annual income was $70,891, plus an additional $51 interest income and $893 dividend income. Her current financial affidavit shows a liability to A. G. Edwards of $85,000. Her financial affidavit dated September 3, 1997, shows that she has an A. G. Edwards stock account with a value of $356,158. Her affidavit shows that she is making a weekly payment of $100 on the A. G. Edwards $85,000 loan. That is CT Page 11681 incorrect in that the monthly payment is approximately $600, but the monthly payment is not being made and is simply being allowed to increase her margin loan. In 1996, she also had a long term capital gain of $58,662 and a short term loss of $937. Her net capital gain in 1996, was $57,725. The plaintiff presently also has assets consisting of her family home at 200 South King Street, Danbury, Connecticut with an equity of $168,000, a 50 percent interest in a condominium in Brookfield with a 50 percent equity of $45,000, a vehicle with an equity of $5000, $500 in a bank account, and $240,007 in an IRA and 401K plan for a total combined value of all assets of $814,665. One of the two condominiums that had been owned by the parties was sold and the remaining one is the one that the plaintiff shows the one-half interest in on her financial affidavit. The sale of the one condominium reduced the home equity loan from approximately $174,000 to approximately $74,000. The plaintiff works solely on commission for A. G. Edwards. In calculating her income, the plaintiff used the period of January 1, 1997 to mid-July, 1997. She is earning less now than in 1996, due to the fluctuations in the stock market.
The court finds that there has been a substantial change in the financial circumstances of the plaintiff from the date of dissolution to the present time. In general, the same sort of criteria are relevant in deciding whether the decree may be modified as are relevant in making the initial award of alimony. They have chiefly to do with the needs and financial resources of the parties. These criteria are outlined in General Statutes46b-82. See Borkowski v. Borkowski, 228 Conn. 729, 736 (1994). The court has considered all the statutory criteria of § 46b-82
regarding the issue of modification of alimony. The court enters the following order.
ORDERS
1. Alimony is reduced from $400 weekly to $100 weekly retroactive to July 7, 1997.
2. The court further orders that for so long as there is an outstanding obligation to pay alimony or any arrearage thereon that the parties are to exchange copies of their federal and state income tax returns within thirty days after such returns have been filed by certified mail, return receipt or registered mail, return receipt. CT Page 11682
3. Any overpayment of alimony by the defendant to the plaintiff is to be repaid by December 30, 1997.
Axelrod, J.